UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | | |
|---|---|---|
| KEVIN B. GIBSON, | ) | No. EDCV 06-900 (CW) |
| | ) | |
| Plaintiff, | ) | DECISION AND ORDER |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner, Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

The parties have consented, under 28 U.S.C. § 636(c), to the jurisdiction of the undersigned magistrate judge.  Plaintiff seeks review of the denial of disability benefits.  The court finds that judgment should be granted in favor of defendant, affirming the Commissioner's decision.

**I.  BACKGROUND**

Plaintiff Kevin B. Gibson was born on March 23, 1955, and was fifty years old at the time of his administrative hearing. [Administrative Record, "AR," 62, 406, 408.]  He has a tenth grade education and past relevant work experience as a machinist. [AR 12,

16-17.] Plaintiff alleges disability owing to severe depression, recurring cysts on his tailbone, diabetes, anxiety and pain. [AR 122.]

## II. PROCEEDINGS IN THIS COURT

Plaintiff's complaint was lodged on August 16, 2006, and filed on August 23, 2006. On March 1, 2007, defendant filed an answer and plaintiff's Administrative Record ("AR"). On June 14, 2007, the parties filed their Joint Stipulation ("JS") identifying matters not in dispute, issues in dispute, the positions of the parties, and the relief sought by each party. This matter has been taken under submission without oral argument.

## III. PRIOR ADMINISTRATIVE PROCEEDINGS

Plaintiff applied for disability insurance benefits ("DIB") and supplemental security income ("SSI") on September 15, 2003, alleging disability since December 12, 1993. [AR 62, 406.] An administrative hearing was held on May 18, 2005, before Administrative Law Judge ("ALJ") Helen Hesse. [AR 408.] Plaintiff appeared with counsel, and testimony was taken from plaintiff, medical expert Sami Nafoosi and vocational expert Stephen Berry. [Id.] The ALJ denied benefits in a decision dated September 22, 2005. [AR 11-20.] When the Appeals Council denied review on June 16, 2006, the ALJ's decision became the Commissioner's final decision. [AR 4.]

## IV. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The Commissioner's (or ALJ's) findings and decision should be upheld if they are free of legal error and supported by substantial evidence. However, if the court determines that a finding is based on legal error or is not supported by substantial evidence in the record, the court may reject

the finding and set aside the decision to deny benefits.  See Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Tonapetyan v. Halter, 242 F.3d 1144, 1147 (9th Cir. 2001); Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir.  2001); Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996); Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995)(per curiam).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720.  It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id.  To determine whether substantial evidence supports a finding, a court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Id.  "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Reddick, 157 F.3d at 720-721; see also Osenbrock, 240 F.3d at 1162.

## V.  DISCUSSION

### A.  THE FIVE-STEP EVALUATION

To be eligible for disability benefits a claimant must demonstrate a medically determinable impairment which prevents the claimant from engaging in substantial gainful activity and which is expected to result in death or to last for a continuous period of at least twelve months. Tackett, 180 F.3d at 1098; Reddick, 157 F.3d at 721; 42 U.S.C. § 423(d)(1)(A).

Disability claims are evaluated using a five-step test:

> Step one: Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.

>    Step two: Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>    Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>    Step four: Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
>    Step five: Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996); see also Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987); Tackett, 180 F.3d at 1098-99; 20 C.F.R. § 404.1520, § 416.920.  If a claimant is found "disabled" or "not disabled" at any step, there is no need to complete further steps.  Tackett, 180 F.3d 1098; 20 C.F.R. § 404.1520.

Claimants have the burden of proof at steps one through four, subject to the presumption that Social Security hearings are non-adversarial, and to the Commissioner's affirmative duty to assist claimants in fully developing the record even if they are represented by counsel.  Tackett, 180 F.3d at 1098 and n.3; Smolen, 80 F.3d at 1288.  If this burden is met, a prima facie case of disability is made, and the burden shifts to the Commissioner (at step five) to prove that, considering residual functional capacity ("RFC")[1], age,

---

[1] Residual functional capacity measures what a claimant can still do despite existing "exertional" (strength-related) and "nonexertional" limitations.  Cooper v. Sullivan, 880 F.2d 1152, 1155 n.s. 5-6 (9th Cir. 1989).  Nonexertional limitations limit ability to work without directly limiting strength, and include mental, sensory, postural, manipulative, and environmental limitations.  Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993); Cooper, 800 F.2d at 1155 n.7; 20 C.F.R. § 404.1569a(c).  Pain may be either an exertional or a nonexertional limitation.  Penny, 2 F.3d at 959; Perminter v. Heckler,

education, and work experience, a claimant can perform other work which is available in significant numbers.  Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. § 404.1520, § 416.920.

**B.   THE ALJ'S EVALUATION IN PLAINTIFF'S CASE**

Here, the ALJ found that plaintiff had not engaged in substantial gainful activity since his alleged disability onset date (step one); that plaintiff had "severe" impairments, namely arthritis of the thoracic spine, diabetes mellitus, hypertension and depressive disorder not otherwise specified versus major depression (step two); and that plaintiff did not have an impairment or combination of impairments that met or equaled a "listing" (step three).  [AR 12, 14.]  Plaintiff was found to have an RFC for "light" work, including lifting and carrying ten pounds frequently and twenty pounds occasionally; sitting for eight hours in an eight-hour workday; standing and walking for six hours in an eight-hour workday with the need to change position once per hour; occasionally climbing stairs ladders and scaffolds, and occasionally bending, stooping, crouching crawling, kneeling and balancing; and limiting himself to simple and repetitive tasks with occasional public contact and no supervision of others. [AR 14-15.]   Based on this RFC, plaintiff was found unable to return to his past relevant work as a machinist (step four). [AR 17.] The ALJ accepted the opinion of the vocational expert, who testified that a person with plaintiff's limitations could perform "other work" in the national economy, such as sewing machine operator, cleaner/housekeeper and assembler (step five). [AR 18.]  Accordingly, plaintiff was found not "disabled" as defined by the Social Security

---

765 F.2d 870, 872 (9th Cir. 1985); 20 C.F.R. § 404.1569a(c).

Act. [Id.]

**C.  ISSUES IN DISPUTE**

The parties' Joint Stipulation identifies four disputed issues:

1. Whether the ALJ properly evaluated the opinion of plaintiff's treating physician;

2. Whether the ALJ made proper credibility findings;

3. Whether the ALJ properly considered the side effects of plaintiff's medications; and

4. Whether the ALJ posed a complete hypothetical question to the vocational expert.

[JS 2.]

**D.  Issue One: The Treating Medical Opinion**

According to the medical record, plaintiff's first visit with Dr. Ahmad Tarar, a psychiatrist at the VA hospital in Loma Linda, occurred in January 2003. [AR 265.] Dr. Tarar commented during that visit that plaintiff "is in depressed mood and wonders whether it will ever get better." [Id.] Dr. Tarar also noted that plaintiff was "cooperative, pleasant and compliant," "linear" with "no evidence of psychosis," had "good insight" and "fair judgment," and denied suicidal or homicidal ideation. [Id.] According to Dr. Tarar, plaintiff had a Global Assessment of Functioning ("GAF") score of 50.[2] Dr. Tarar increased plaintiff's antidepressant prescription, recommended counseling and scheduled a review for one month later. [Id.]

---

[2] A GAF score represents a clinical evaluation of an individual's overall level of functioning. A GAF score of 41 to 50 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational or school functioning (e.g., no friends, unable to keep job.) DSM-IV, American Psychiatric Association, (Washington, 1994).

The record shows that plaintiff subsequently visited Dr. Tarar, among other physicians at the VA hospital, in March 2003 [AR 263], April 2003 [AR 254], June 2003 [AR 231], July 2003 [AR 228], August 2003 [AR 226], October 2004 [AR 378], and March 2005 [AR 361].  Dr. Tarar's notes covering the subsequent visits are essentially the same as those from the January 2003 visit:  he noted plaintiff's depressed mood and stress, as well as his pleasantness, cooperation, good insight and fair judgment; assigned a GAF score as low as 45; and regularly adjusted plaintiff's medication.  In his notes for the July 2003 visit, however, Dr. Tarar wrote that plaintiff was "fully and permanently disabled at this time" because of his "medical and psychological condition." [AR 228.]  Dr. Tarar reached the same conclusion in an undated letter, which stated the following:

> Mr. Kevin B. Gibson has been under my care at this facility.  He has both medical and psychiatric conditions and has not been able to work for the last five years.  At present time, he is permanently and fully disabled to engage in full employment.
>
> If you have any further questions, feel free to call me.

[AR 359.]

The ALJ declined to give any weight to Dr. Tarar's conclusion of disability, finding it "conclusory" and inconsistent with the doctor's own progress notes. [AR 15.]  Plaintiff contends that this finding is insufficient because of its "lack of discussion," because Dr. Tarar's opinion invited "further inquiry," and because the opinion was supported by, among other things, a GAF score of 45. [JS 3-4.]

In the Ninth Circuit, the opinion of a treating physician is given deference because "he is employed to cure and has a greater opportunity to know and observe the patient as an individual." Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)(citations

7

omitted).  "The opinion of the treating physician, however, is not necessarily conclusive as to either the physical condition or the ultimate issue of disability."  <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1989); <u>Rodriguez v. Bowen</u>, 876 F.2d 759, 761-62 & n.7 (9th Cir. 1989).  Where, as here, a treating physician's opinion on disability is controverted,[3] it can be rejected only with specific and legitimate reasons supported by substantial evidence in the record.  <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995); <u>see also</u> <u>Benecke v. Barnhart</u>, 379 F.3d 587, 591 n.1 (9th Cir. 2004).

    Here, the record reveals that Dr. Tarar's treatment of plaintiff was too abbreviated and cursory to support his ultimate conclusion that plaintiff was disabled.  An ALJ may discredit a treating physician's opinion that is conclusory, brief and unsupported by the record as a whole or by objective medical findings.  <u>Bayliss v. Barnhart</u>, 427 F.3d 1211, 1217 (9th Cir. 2005)(citing <u>Thomas v. Barnhart</u>, 278 F.3d 947, 957 (9th Cir. 2002); <u>see also</u> <u>Batson v. Commissioner of the Social Security Administration</u>, 359 F.3d 1190, 1195 (9th Cir. 2004).  Dr. Tarar saw plaintiff only a few times before making his disability pronouncement in his July 2003 treatment note; moreover, the treatment notes themselves were highly repetitive and contained very little to suggest that Dr. Tarar believed plaintiff was precluded from working, and it does not appear that Dr. Tarar administered any objective clinical tests before forming his opinion.  To the extent that plaintiff argues that Dr. Tarar should have been

---

[3] In contrast to Dr. Tarar, Dr. Adam Cash, an examining psychologist, concluded, upon administering a series of psychological tests, that there were "no substantial psychological limitations to Mr. Gibson's ability to work." [AR 121.]  The ALJ gave "significant weight" to Dr. Cash's opinion because he administered a battery of tests and conducted a clinical interview. [AR 15.]

recontacted for further information, the record was neither ambiguous nor insufficient so that such an action was required. See Bayliss, 427 F.3d at 1217 (recontacting treating physician not required when ALJ, with support in the record, found the evidence adequate to make a determination regarding disability); Thomas, 478 F.3d at 958.

Moreover, plaintiff's reference to the GAF score of 45, by itself, does not alter the conclusion that Dr. Tarar's opinion of disability was brief and conclusory. Although a GAF score may be a useful tool to supplement other medical evidence, it is not, by itself, compelling evidence of disability. See, e.g., Howard v. Commissioner of Social Security, 276 F.3d 235, 241 (6th Cir. 2002)("While a GAF score may be of considerable help to the ALJ in formulating the RFC,... the ALJ's failure to reference the GAF score in the RFC, standing alone, does not make the RFC inaccurate.") Accordingly, the ALJ's evaluation of Dr. Tarar's opinion does not require reversal.

### E.   ISSUE TWO: THE CREDIBILITY DETERMINATION

The ALJ found plaintiff's testimony as to his symptoms "not fully credible" based on, among other reasons, plaintiff's questionable "sincerity" regarding exercise habits. [AR 15-16.]  Although plaintiff testified that he does not exercise, he also testified that he earlier lied to his VA physician that he was exercising regularly because "I didn't want her getting on me." [AR 438.]  Plaintiff contends that such an inconsistency does not call into question his sincerity "under oath" because he was not under oath when he was talking to his physician. [JS 14.]  A credibility evaluation, however, is not confined to an examination of a plaintiff's statements under oath. Rather, it may include "ordinary techniques of credibility

Case 5:06-cv-00900-CW   Document 18   Filed 07/10/07   Page 10 of 12   Page ID #:80

evaluation," such as the plaintiff's reputation for truthfulness; inconsistencies within the plaintiff's testimony, or between the plaintiff's testimony and the plaintiff's conduct; and a lack of candor by the plaintiff regarding matters other than the plaintiff's subjective symptoms.  See Light v. Social Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997); Fair v. Bowen, 885 F.2d 597, 604 n.5 (9th Cir. 1989).  Accordingly, plaintiff's inconsistent statements regarding exercise was a legitimate part of the ALJ's evaluation.  In any event, it was not a major part of the analysis, but one of several reasons in support of the credibility determination.

**F.   ISSUE THREE: MEDICATION SIDE EFFECTS**

Plaintiff contends that the ALJ failed to consider the impact of his medication side effects on his functional capacity, citing Social Security Ruling ("SSR") 96-7p.[4]  [JS 19.]  Specifically, plaintiff points out that one the medications he takes, Seroquel, has been known to cause dizziness, difficulty speaking and swallowing, shakiness, trembling, vision problems, weakness, lightheadedness, drowsiness, constipation, weight gain, agitation, insomnia, and headache, among other side effects. [JS 19.]  As defendant has pointed out, however, plaintiff has not alleged that he actually suffers from these side effects.  At most, plaintiff has testified that his medication makes him groggy in the morning. [AR 420-21.]  Without more, this is not enough to call into question the ALJ's evaluation.  See Osenbrock, 240

---

[4] SSR 96-7p states, in pertinent part, that, "When additional information is needed to assess the credibility of the individual's statements about symptoms and their effects, the adjudicator must make every reasonable effort to obtain available information that could shed light on the credibility of the individual's statements." Such information includes the "type, dosage, effectiveness and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms."  SSR 96-7p, 1996 WL 374186 at *3.

10

F.3d at 1164 (upholding ALJ's disregard of "passing mentions" of alleged medication side effects of "dozing off" and "dry mouth" when "there was no evidence of side effects severe enough to interfere with [plaintiff's] ability to work.").

**G.   ISSUE FOUR: HYPOTHETICAL QUESTIONS TO THE VE**

Finally, plaintiff challenges the hypothetical questions posed to the VE at the administrative hearing regarding jobs that could be performed by a person with plaintiff's limitations. [JS 22.] Plaintiff specifically argues that the questions failed to set out all of plaintiff's limitations, specifically, his medication side effects and the limitations imposed by Dr. Tarar. [Id.]  It is well-established in the Ninth Circuit, however, that an ALJ "is free to accept or reject restrictions in a hypothetical question that are not supported by substantial evidence." Osenbrock, 240 F.3d at 1164-65 (citing Magallanes, 881 F.2d at 756-57); Robbins v. Social Sec. Admin., 466 F.3d 880, 886 (9th Cir. 2006).  As stated above, there was not substantial evidence that plaintiff suffered from medication side effects severe enough to interfere with his ability to work; the fact that some of the medications plaintiff was taking could, in theory, cause serious side effects is not substantial evidence.  As for Dr. Tarar, he offered no opinion at all as to plaintiff's specific functional limitations, but only opined that plaintiff was "disabled." Under these circumstances, the hypothetical questions posed to the VE were not legally inadequate. Robbins, 466 F.3d at 886.

**VI.   ORDERS**

Accordingly, **IT IS ORDERED** that:

1. The decision of the Commissioner is **AFFIRMED**.

2. This action is **DISMISSED WITH PREJUDICE**.

3. The Clerk of the Court shall serve this Decision and Order and the Judgment herein on all parties or counsel.

DATED: July 10, 2007

                                              _____/s/_____
                                                   CARLA M. WOEHRLE
                                         United States Magistrate Judge